IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KRISTEN A. WHITE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:23-cv-00267 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| FLAGSHIP FACILITY SERVICES, ) | |
| INC., ) | |
| ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendant. ) | |

Plaintiff Kristen A. White, a Virginia resident, brought this action against Defendant Flagship Facility Services, Inc. ("Flagship"), a California corporation with its principal place of business in Texas, alleging that Flagship was negligent when its employees failed to post proper signage after mopping a locker room floor, causing her to slip and fall. This matter is now before the court on Flagship's motion to dismiss. (ECF No. 7.) The motion has been fully briefed and it is ripe for decision.[1] For the following reasons, the court will deny Flagship's motion to dismiss.

### I.   BACKGROUND

The facts giving rise to this slip-and-fall case are relatively straightforward. At all relevant times, Plaintiff Kristen White was employed at a manufacturing facility (the "Facility") located in Pulaski County, Virginia, where Flagship provided janitorial services. (Compl. ¶¶ 3–

---

[1] The court will forgo oral argument because it would not aid in the decisional process.

5 [ECF No. 1-1].) These janitorial services included cleaning and mopping the floors of the employee locker room at the Facility. (*Id.* ¶¶ 4, 10.)

On September 23, 2021, a Flagship employee allegedly cleaned the employee locker room and mopped the floor, which created "a slippery and hazardous condition." (*Id.* ¶ 10.) When White was leaving the Facility later that day, she entered the locker room where she "slipped and fell immediately." (*Id.* ¶¶ 9, 13.) After getting up, White noticed that her legs were wet and had a sticky substance on them, allegedly from the substance used to clean the floor. (*Id.* ¶¶ 14–15.) White claims that she never saw any warnings or signage indicating that the floor was wet or slippery, and that these conditions were not open and obvious to her. (*Id.* ¶¶ 11–12, 16.) These conditions, White contends, caused other Facility employees to slip and fall as well. (*Id.* ¶ 18.)

Following this mishap, White filed suit in Virginia state court on April 5, 2023, asserting that Flagship negligently performed its janitorial services. (Notice of Removal ¶ 1 [ECF No. 1]; Compl. ¶¶ 17, 20–23.) Flagship then removed the case to this court (ECF No. 1) and filed the present motion to dismiss (ECF No. 7). For the following reasons, Flagship's motion to dismiss will be denied.

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. *Id.* The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III.   ANALYSIS

Flagship argues that White has failed to state a claim for negligence because it did not owe her a common law duty of care. Rather, Flagship contends that it only owed a contractual[2] duty to White's employer and that her employer could not delegate its duty to maintain the Facility in a safe condition. (Def.'s Mot. to Dismiss p. 2–4 [ECF No. 7].)

**A. Choice of Law Rules**

Before analyzing Flagship's argument, the court must determine what law to apply. "In this diversity action, the court must apply the substantive law and choice-of-law rules of the state in which it sits—Virginia." *MMG Ins. Co. v. Progressive N. Ins. Co.*, No. 5:21-CV-00075,

---

[2] As White correctly points out, the court cannot consider Flagship's contract without converting the instant motion into one for summary judgment unless it is incorporated into the complaint by reference, is attached to the complaint as an exhibit, or is integral to the complaint. *See* Fed. R. Civ. P. 12(d); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Because the contract itself has not been provided to the court in any way, however, there is no document for the court to consider. Instead, the court only considers the purported existence of Flagship's contract for purposes of applying the source-of-duty rule, and it may do so without converting the instant motion into one for summary judgment.

2022 WL 16629933, at *3 (W.D. Va. Nov. 2, 2022). With respect to tort claims, Virginia's choice-of-law rules dictate that "the law of the place of the wrong" (*lex loci delicti*) supplies the substantive law to those claims. *Milton v. IIT Rsch. Inst.*, 138 F.3d 519, 521 (4th Cir. 1998); *see, e.g., Jones v. R.S. Jones and Assoc., Inc.*, 431 S.E.2d 33, 34 (Va. 1993). Because White's accident took place in Virginia, "the doctrine of *lex loci delicti* applies and requires Virginia law to govern the matter." *Ryder Truck Rental, Inc. v. UTF Carriers, Inc.*, 790 F. Supp. 637, 641 (W.D. Va. 1992).

## B. Source of Duty Rule

Citing the source-of-duty rule, Flagship primarily argues that White cannot state a claim for negligence because it only owed a contractual duty to White's employer and did not owe a common law duty of care to her (or any other employee). (Def.'s Mot. to Dismiss p. 2–4.)

"The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). In contrast, "the major consideration underlying contract law is the protection of bargained for expectations." *Id.* "Losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Id.* Stated differently, "tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway." *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019). Therefore, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of contract." *Id.* (cleaned up) (quoting *MCR Fed., LLC v. JB&A Inc.*, 808 S.E.2d 186, 193 (Va. 2017)). "Whether a legal duty

in tort exists is a pure question of law." *Id.* at 253 (quoting *Brown v. Jacobs*, 768 S.E.2d 421, 424 (Va. 2015)).

"In certain circumstances, a single act or occurrence can support causes of action for both breach of contract and for breach of a duty arising in tort." *MCR Fed.*, 808 S.E.2d at 192 (quoting *Dunn Constr. Co. v. Cloney*, 682 S.E.2d 943, 946 (Va. 2009)). To determine "whether a cause of action sounds in tort, contract, or both, the source of the duty violated must be ascertained." *MCR Fed.,* 808 S.E.2d at 192 (quoting *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)). To do this, the court must examine the nature of the allegations of negligence in the complaint:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Richmond Metro. Auth.*, 507 S.E.2d at 347. "Framed this way, the source-of-duty rule attempts . . . to protect [the Virginia Supreme Court's] jurisprudence from the modern trend that is intent on turning every breach of contract into a tort." *Tingler*, 834 S.E.2d at 255 (cleaned up) (quoting *MCR Fed., LLC*, 808 S.E.2d at 193).

To counteract this trend, Virginia's Supreme Court adheres to the "traditional view" that "there is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made." *Id.* at 256 (quoting William L. Prosser & W. Page Keeton, Prosser and Keeton on the Law of Torts § 92, at 657 (Dan B.

Dobbs et al. eds., 5th ed. 1984) (hereinafter "Prosser & Keeton")). By contrast, there may be liability for acts of misfeasance, which are "lawful act[s] performed in a wrongful manner." *Id.* (cleaned up) (quoting Black's Law Dictionary 1265 (11th ed. 2019)). Aside from drawing a line between action and inaction, the distinction between these concepts requires the court to determine whether the alleged tortious conduct "has gone so far that it has begun to affect the interests of the plaintiff beyond the expected benefits of the contract itself," thus converting the defendant's action into a "positive act assuming the obligation." *Id.* at 257 (quoting Prosser & Keeton at 662).

Applying these principles, White has plausibly alleged that Flagship had a common-law duty to exercise reasonable care when its employees mopped the locker room floor. Even though Flagship contracted with White's employer to provide janitorial services, the existence of that contract does not vitiate Flagship's duty to exercise reasonable care while performing that duty, even if it was undertaken pursuant to a contract with White's employer. *See Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 870 (Va. 2011) ("Just because the application of pesticides is included in [defendant's] contractual duty to control pests, it does not follow that the [plaintiffs] have contracted away their common law and statutory rights."); *Tingler*, 834 S.E.2d at 258 ("[N]egligent acts of misfeasance . . . that cause reasonably foreseeable personal injuries could implicate tort liability irrespective of a contractual duty to prudently avoid injuring others during the performance of the contract.").

Indeed, in *Kaltman v. All American Pest Control, Inc.*, the Virginia Supreme court explained that a party performing according to a contract can be sued for negligence if its actions breach a common law duty that is independent of its contractual duty. 706 S.E.2d at 870. In that case,

a homeowner contracted with a pesticide contractor "to apply chemicals to control . . . pests" in the home. *Id.* at 867. Instead of using chemicals approved for use in residential buildings, however, the contractor applied "concentrations of . . . a toxic ingredient . . . not licensed for residential use." *Id.* at 866–67. Once hauled into court, the contractor argued, as Flagship does here, that no tort remedy existed because it only breached a contractual duty to apply the appropriate pesticide. *Id.* at 868. But the court disagreed, concluding that, by erroneously applying toxic chemicals, the contractor "breached common law and statutory duties independent of the company's contractual duty to control pests." *Id.* at 870.

In the more recent case of *Tingler v. Graystone Homes, Inc.*, the Virginia Supreme Court reaffirmed its holding in *Kaltman*, noting that "the gist of the case was clear: it was the contractor's affirmative act of using a dangerous pesticide, not the failure to use a safe pesticide, that mattered." 834 S.E.2d at 257. The court likened this to a home builder who "could be sued in tort if he negligently dropped a beam on a bystander or if he negligently left an inconspicuous hole in an unfinished floor into which a visitor fell," even if he was handling the beam or finishing the floor pursuant to a contract. *Id.* at 258. Applying this reasoning to the facts in *Tingler*, the court determined that the allegations against the defendant—that it had failed to weatherproof a home—did not "sound in tort" and did not implicate a common law duty because the defendant was only alleged to have negligently "failed to do what the contract had required . . . ." *Id.* at 261. Instead, the court held that these allegations "predominate *as instances of nonfeasance*, not misfeasance or malfeasance." *Id.* (emphasis added).

Like the pesticide contractor in *Kaltman* or the example provided in *Tingler* of the home builder who dropped a beam, Flagship allegedly committed an affirmative act of negligence

that was independent of its contractual duty to provide janitorial services. *See Kaltman*, 706 S.E.2d at 870; *Tingler*, 834 S.E.2d at 258. Similar to the defendant in *Kaltman*, Flagship positively assumed its contractual obligation to provide janitorial services, which included mopping the floor. But when Flagship allegedly failed to post proper warnings that the floor was wet, its act of mopping the floor became an act of misfeasance, i.e., a "lawful act performed in a wrongful manner." Black's Law Dictionary 1265 (11th ed. 2019). And as the court stated in *Tingler*, "the gist" is clear. It is not Flagship's failure to do something required of it by contract that is determinative here; instead, it is the positive act of mopping the floor in a manner that allegedly created a hazardous condition that forms the basis of White's claim. *See Tingler*, 834 S.E.2d at 257 ("The gist of the case was clear: it was the contractor's affirmative act of using a dangerous pesticide, not the failure to use a safe pesticide, that mattered."). Unlike the contractor in *Tingler*, White does not allege that Flagship "failed to do what the contract had required"; rather, she argues that Flagship assumed its contractual obligations, but in so doing, created a hazardous condition that was likely to cause injury to anyone who entered the locker room. *See id.* at 261.

Because White alleges that Flagship committed an act of misfeasance by mopping the floor without posting warning signs, her allegations sound in tort rather than contract. As such, Flagship owed her a duty to exercise the same degree of reasonable care that another janitorial service would have exercised in the same or similar circumstances as it relates to persons who could be expected to traverse that floor—like White.

In resisting this conclusion, Flagship relies on *Holderfield v. Thyssenkrupp Elevator Corp.*, No. 120CV01599RDAIDD, 2022 WL 980638 (E.D. Va. Mar. 30, 2022), to support its

argument that it did not owe a common-law duty of care to White. But Flagship's reliance on *Holderfield* is misplaced. That decision is in line with *Tingler* and *Kaltman*. In *Holderfield*, the plaintiff sued an elevator services contractor for negligence after it failed to repair a malfunctioning elevator, resulting in injuries to the plaintiff. *Id.* at *8. Although the court ultimately held that the "source of [the contractor's] duty arises entirely from the private agreement to provide elevator repair and maintenance services," *see id.* at *10, it expressly recognized that the application of the source-of-duty rule depended on the distinction between nonfeasance and misfeasance. *Id.* at *9. In so doing, the court determined that the contractor's obligation to repair the elevator would not have been present in the absence of an agreement to that effect. *Id.* at *10. In other words, the contractor had no duty to repair the elevator *without* the contract,[3] and the failure to repair the elevator was therefore an *omission* (nonfeasance) more aptly characterized as a breach of its contractual obligation. But here, Flagship *assumed* its contractual obligation by mopping the floor and providing janitorial services. Once it did so, it had an independent obligation to exercise reasonable care to prevent foreseeable injuries to foreseeable plaintiffs like White.

Accordingly, the source of Flagship's duty is the common law and not its contract with White's employer.

---

[3] If, for example, White had alleged that she had slipped on some substance that Flagship's employees failed to clean up as part of its agreement with White's employer, then her claim would sound in contract. But White alleges positive misfeasance in the performance of its contractual cleaning duties, rather than a failure to act under the contract.

## C. Building Owner's Duty to Maintain the Premises in a Safe Condition

Flagship briefly contends, as an alternative basis for dismissal, that White cannot state a claim for negligence against it because her employer could not delegate its duty to maintain the premises in a safe condition. (Def.'s Mot. to Dismiss at 4.)

Flagship is correct that, "if a duty to maintain a premises in a safe condition is imposed by contract or by law, [as here,] it cannot be delegated to an independent contractor." *Love v. Schmidt*, 389 S.E.2d 707, 709 (Va. 1990); *see Richmond & M.R. Co. v. Moore*, 27 S.E. 70, 71 (Va. 1897) (explaining that a landowner's common law duty to provide a reasonably safe premises for entertainment of invitees could not be delegated to an independent contractor). But here, there is nothing in the pleadings to suggest that White's employer delegated or attempted to delegate that duty to Flagship. While Flagship maintains that it has a contract with White's employer, that contract is not a part of the pleadings, and the court can only speculate as to its terms.

In any event, at this early stage of the litigation, White merely asserts a negligence claim against Flagship for its own act of misfeasance. And Virginia law does not prevent White from suing Flagship for its negligence, her employer for its negligence, or both entities together. *See Southern Floors*, 594 S.E.2d at 910 (a case in which plaintiff sued a building owner and independent contractor for their negligent acts); *Sullivan v. Robertson Drug Co., Inc.*, 639 S.E.2d 250, 256 (Va. 2007) ("If separate and independent acts of negligence of two parties directly cause a single indivisible injury to a third person, either or both wrongdoers are responsible for the whole injury."). As such, this argument may be more aptly made in an action seeking

indemnity or contribution against White's employer, or considered at summary judgment. It is both premature and unsupported at this stage of the proceedings.

## IV. CONCLUSION

For these reasons, Defendant Flagship Facility Services, Inc.'s motion to dismiss (ECF No. 7) will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 10th day of July, 2023.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE